WATERMAN LUMBER & SUPPLY CO. v. ROBBINS et al. (No. 16–2604.)

(Commission of Appeals of Texas, Section B. Dec. 11, 1918.)

1. EXECUTORS AND ADMINISTRATORS ⬡⟳37(2) — FINAL DISCHARGE — ADMINISTRATOR DE BONIS NON.

A final order discharging administrators of an estate absolutely did not negative probate court's power thereafter to appoint administrator de bonis non, there being nothing to show estate had been finally closed.

2. EXECUTORS AND ADMINISTRATORS ⬡⟳328— SALE BY ADMINISTRATOR DE BONIS NON— LAND CERTIFICATE.

A sale by an administrator de bonis non under proper order of the probate court of an unlocated balance land certificate, community property of decedent and his widow, *held* not void; sale having been properly reported and approved.

3. EXECUTORS AND ADMINISTRATORS ⬡⟳328— ADMINISTRATOR DE BONIS NON — RIGHTS AND POWERS.

Administrator de bonis non, successor of others who had failed to act until estate was finally closed, had same rights and powers as if he had been originally appointed on death of decedent, and had continued to act until he sold, under order of court, unlocated balance land certificate, community property of decedent and widow.

4. HUSBAND AND WIFE ⬡⟳276(4) — WIFE'S CONTROL OVER COMMUNITY — ADMINISTRATION ON HUSBAND'S ESTATE.

When administration was granted on estate of husband, wife's control over community property ceased, and estate passed under jurisdiction of probate court for administration and settlement.

5. JUDGMENT ⬡⟳475—PROBATE COURT—PRESUMPTIONS IN FAVOR OF JUDGMENTS.

A probate court is a court of general jurisdiction, and its judgments, within the scope and power granted to it by law, are entitled to the same presumptions in favor of their validity as those of any other court of record of general jurisdiction.

6. JUDGMENT ⬡⟳499—COLLATERAL ATTACK— EVIDENCE DEHORS RECORD.

A presumption in favor of the jurisdiction of courts and the validity of their judgments cannot be overcome in a collateral proceeding by evidence dehors the record that the necessary jurisdictional facts did not exist.

7. HUSBAND AND WIFE ⬡⟳276(6)—COMMUNITY PROPERTY — ADMINISTRATION TO PAY DEBTS.

Community property of husband and wife is subject to administration and sale by administrator of husband or wife under certain circumstances to pay separate debts of either husband or wife.

8. EXECUTORS AND ADMINISTRATORS ⬡⟳349(2) — ORDER OF SALE — COLLATERAL ATTACK — PRESUMPTION.

In trespass to try title constituting collateral attack on long past order of probate court authorizing administrator de bonis non to sell unlocated balance of land certificate, community property of decedent and his wife, it must be conclusively presumed that court, before ordering sale, found fact of existence of debts owing by decedent, condition precedent to its power to authorize sale.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Jane Robbins and others against the Waterman Lumber & Supply Company and others. From judgment for plaintiffs, defendants appealed to the Court of Civil Appeals, which affirmed (159 S. W. 360), and defendant Lumber & Supply Company brings error. Judgment of the Court of Civil Appeals and trial court reversed and rendered in part; otherwise affirmed.

This case originated in the district court of Shelby county. Jane Robbins and others as plaintiffs brought an action of trespass to try title against the Waterman Lumber & Supply Company to recover a tract of land containing 646 acres located by virtue of an unlocated balance certificate issued to John Buckley. The plaintiffs also sought damages by reason of certain timber having been cut and removed from said land by the defendant. The defendant answered by a general denial and plea of not guilty.

The pleadings and the facts found by the Court of Civil Appeals are fully set out in the opinion of that court which is reported in 159 S. W. 360.

We will, however, briefly state the facts upon which our conclusion rests.

A land certificate was issued to John Buckley in 1838, he at that time being married to Elizabeth Buckley, and this certificate was community property. A portion of the certificate was located and patented to John Buckley in 1847. John Buckley died early in the year 1860, leaving his wife, Elizabeth Buckley, and several children surviving him. He left a considerable estate, consisting of about 1,400 acres of land and various notes and some personal property, aggregating in value about $5,000. Soon after his death, his wife, Elizabeth Buckley, and one of his sons, were appointed and qualified as administrators of his estate. Some time during the Civil War, his wife having died, Short and Dysart were appointed administrators of the estate. They,

as administrators, accepted in payment of notes due the estate several thousand dollars of Confederate money. About 1867, or 1868, they made a final report showing their acts as administrators, and filed their account, which was approved, and an order was made discharging them. There was, however, no order closing the administration. About the year 1873, J. L. Defee, husband of one of the daughters of John and Elizabeth Buckley, was appointed administrator of the estate and as such brought a suit against Short and Dysart for an alleged failure on their part to properly account for property received by them as administrators. This suit was settled by compromise. Some time after the death of John Buckley, an unlocated balance certificate for the unlocated part of the original certificate issued to John Buckley was properly issued, and it was admitted that this certificate was community property of John and Elizabeth Buckley. In the year 1880, Defee, as administrator, applied for and obtained a proper order of the probate court of Shelby county, Tex., authorizing a sale of said unlocated balance certificate. The sale was duly made to one W. T. Winslow, and was properly reported to the court, and the sale approved. The Waterman Lumber & Supply Company owned whatever right to this certificate and the land located by virtue of same which passed by this sale. The land in controversy was located by virtue of this certificate. The plaintiffs, Jane Robbins and others, who are defendants in error in this court, are heirs of John and Elizabeth Buckley, and, as such, inherited a portion of whatever estate was left by them, subject, of course, to administration.

The probate records of Shelby county were burned in the year 1882, and nothing relating to the estate of John Buckley was saved except the original inventory made in the year 1860. This inventory showed various items of property owned by said John Buckley, but did not include the unlocated balance certificate, which had not at that time been issued. The inventory failed to disclose any indebtedness against the estate.

All the above facts were either agreed to or were established and found by the trial court and the Court of Civil Appeals. In addition to the foregoing facts, the plaintiffs in the court below, Jane Robbins and others, over the objection of the defendant introduced parol testimony tending to show that at the time of the sale of the certificate in 1880 there were no community debts against the estate of John Buckley, and tending also to show that no claims were ever presented and approved against said estate.

The district court found as a fact from this parol testimony that there were no community debts against the estate at the time the land certificate was sold, and this finding was approved by the Court of Civil Appeals. The district court also made a finding to the effect that the sale of the certificate to Winslow did not purport to convey the community interest of Elizabeth Buckley, the wife. This finding, as we construe the opinion of the Court of Civil Appeals, was held unauthorized by the evidence, and after a search of the record we are unable to find any evidence which would support the finding. The trial court rendered judgment for plaintiffs for an undivided interest in the land and for damages growing out of the cutting of timber and removing the same from the land, and rendered judgment for the defendant for the remaining interest in the land. The defendant appealed and assigned errors, and the plaintiffs in the Court of Civil Appeals filed cross-assignments of error. The judgment of the trial court was affirmed. The case is now in this court upon the application of the Waterman Lumber & Supply Company only. Such other facts as may be necessary will be stated in the opinion.

Davis, Davis & Davis, of Center, Greer, Nall & Bowers, of Beaumont, and Jno. T. Garrison, of Houston, for plaintiff in error.

Oliver J. Todd, of Beaumont, for defendants in error.

MONTGOMERY, P. J. (after stating the facts as above). [1, 2] The Court of Civil Appeals, as we think, correctly held that the granting of letters of administration to J. L. Defee was not void, and also correctly held that the sale of the certificate to Winslow by Defee as administrator was not a void sale. The reasons for their conclusions and the authorities supporting the same are shown in the opinion. The validity of the administration by Defee is not questioned in this court, nor is the conclusion of the Court of Civil Appeals to the effect that the sale to Winslow passed the community interest of John Buckley.

The plaintiff in error, Waterman Lumber & Supply Company, has assigned as error in this court the action of the Court of Civil Appeals holding that parol evidence was admissible to show that there were no community debts at the time of the sale of the certificate, and also complains of the judgment allowing a recovery by defendants in error of an undivided interest in the land, and of damages.

[3] The fact that, prior to the appointment of J. L. Defee as administrator, others had been appointed who had for some reason failed to act until the estate was finally closed, is of no consequence. Defee, as administrator, had the same rights and powers as if he had been originally appointed upon the death of Buckley and had continued to act until the time of the sale of the certificate.

The case then is one where an administrator of the estate of the husband has been legally appointed during the life of the wife and under proper orders of the court has

sold and conveyed community property. On the trial in the district court, the regularity of the appointment and qualification, and also the regularity of the sale of certificate, was admitted. It is true that the defendants in error reserved from their admission the claim that the court had no jurisdiction to make the appointment; but this contention was denied by the Court of Civil Appeals, and is not here complained of. The fact that about 20 years intervened between the time letters were first granted and the sale of the certificate is not, in our opinion, important. Burdett v. Silsbee's Adm'r, 15 Tex. 617. The delay in this case is, to some extent at least, accounted for by the condition of the country incident to the Civil War, and the disturbed political conditions which existed for a number of years thereafter.

The fact that the inventory failed to show any indebtedness of the estate is not even a circumstance tending to show that such indebtedness did not exist, as under the law in force at that time the inventory was not required to show what, if any, debts the estate owed. Oldham & White's Digest, § 740.

There is therefore nothing in the record, so far as is disclosed, which negatives the legal presumptions applicable to the transaction.

[4] When administration was granted on the estate of John Buckley, the wife's control over the community property ceased, and the estate passed under the jurisdiction of the probate court for administration and settlement. Hollingsworth v. Davis, 62 Tex. 438; Moke v. Brackett, 28 Tex. 443; Lawson v. Kelley, 82 Tex. 463, 17 S. W. 717.

[5] It is settled that a probate court is a court of general jurisdiction; that its judgments within the scope and power granted to it by law are entitled to the same presumptions in favor of their validity as any other court of record of general jurisdiction. Alexander's Heirs v. Maverick, 18 Tex. 179, 67 Am. Dec. 693; Guilford v. Love, 49 Tex. 735; Weems v. Masterson, 80 Tex. 46, 15 S. W. 590; Martin v. Robinson, 67 Tex. 368, 3 S. W. 550.

In the last case cited, Justice Stayton said: "When a court of record, having such jurisdiction, has assumed to exercise it in a given case, all presumptions are in favor of the validity of its proceedings; and if the record of such a court shows that the steps necessary to clothe it with power to act in the given case were taken, or if the record be silent upon this subject, then its judgment order or decree must be held conclusive in any other court of the same sovereignty when collaterally called in question."

In the case of Hardy v. Beaty, 84 Tex. 567, 19 S. W. 778, 31 Am. St. Rep. 80, it is held that, when all the facts necessary to a proper exercise by a court of its jurisdiction do not appear from the record, it will be presumed that the court ascertained all such facts before rendering judgment.

[6] This presumption in favor of the jurisdiction of courts and the validity of their judgments cannot be overcome in a collateral proceeding by evidence outside the record that the necessary jurisdictional facts did not exist. As said in Murchison v. White, 54 Tex. 83:

"It is believed that a careful analysis of the cases on this subject will show that, in a collateral proceeding, the only contingency in which the judgment of a domestic court of general jurisdiction, which has assumed to act in a case over which it might by law take jurisdiction of the subject-matter and the person, can be questioned, is when the record shows affirmatively that its jurisdiction did not attach in the particular case."

In the same case it is further said:

"This question in such a proceeding must be tried by the recitals in the record itself and the presumptions arising therefrom. If they show a case of jurisdiction, then in a collateral proceeding, upon grounds of public policy, the record purports absolute verity and is conclusive."

There is a very able discussion of this rule and the reasons upon which it rests by Justice Denman in the case of Crawford v. McDonald, 88 Tex. 626, 33 S. W. 325.

This rule of public policy, we think, is of peculiar force when applied to ancient transactions and to cases like this, where the record has been lost and it was sought by the fallible memories of men to annul the solemn adjudications of a court which has been recognized and acted upon for a long period of time.

[7] The record in this case shows that John Buckley died in 1860, and that his wife survived him for a year, or more; that administration was regularly granted on his estate (which, of course, included the community property not exempt); that in due course of administration the land certificate was sold under proper orders of the court. It is sought in this collateral proceeding to impeach the judgment of the probate court by showing that the court was not authorized to make the sale because no community debts existed. If this sale can be attacked in this way and the title claimed under it destroyed by parol evidence that no community debts existed, then every such sale is open to collateral attack, and no reliance can be placed in the judgments and orders of probate courts. The fact, if it be true, that there were no community debts, would not be conclusive that no debts existed for which the property could legally be sold by the administrator or the husband, as the community property is subject to administration and sale by the administrator of the husband under certain circumstances for the purpose of paying the separate debts of either the husband or wife. Lee v. Henderson, 75 Tex. 192, 12 S. W. 981; Taylor v. Murphy, 50 Tex. 300.

[8] If the existence of debts was a condition precedent to the power of the court to authorize the sale of the property, we think it must be conclusively presumed in this col-

lateral proceeding that the court found this necessary fact before ordering the sale of the property.

If we are correct in this view, then it necessarily follows that parol evidence to contradict the presumption arising from the judgment was not admissible.

We therefore hold that the administrator's sale passed the title to the certificate as against the heirs of both the husband and the wife. In reaching this conclusion, we have not referred to the case of Dickson v. Moore, 9 Tex. Civ. App. 514, 30 S. W. 76, which is directly in point upon the question discussed and in which a writ of error was denied, for the reason that the writ may have been refused upon another ground; that is, upon the ground that the evidence offered was insufficient to overcome the presumption arising from the judgment, even if admissible.

We think it proper to refer briefly to the cases of Moody v. Butler, 63 Tex. 210, and Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367, cited by the Court of Civil Appeals in support of its conclusion that parol evidence was admissible to show that there were no community debts and that the sale only passed the community interest of the husband in the certificate.

In Moody v. Butler, 63 Tex. 210, the facts show that the land in controversy was the community property of Joel Clapp and his wife, Malinda Clapp. The wife died in March, 1852, and Joel Clapp died January 1, 1854, and there was no evidence that at the time of Joel Clapp's death there remained unpaid any community debts. Joel Clapp's executor sold the land in controversy. Under these facts, it was held that, in order to authorize a sale of the interest inherited by the children from their mother, it was necessary that there should have been community debts and that the burden of proof was on the parties seeking to give the deed that effect. In support of this proposition, Sanger v. Moody's Heirs, 60 Tex. 96, was cited. This last case was one where the surviving husband, without administration, sold community property, and the court discussed and applied the general rule long recognized in this state that the survivor without administration had the power to sell community property for the purpose of paying community debts, and that the burden of proof was on the purchaser to show the existence of such debts.

Justice Willie, in Moody v. Butler, extended this doctrine to the husband's administrator in cases where the wife died prior to the death of the husband. He lays stress upon the fact that the wife died almost two years before the death of the husband, and that upon her death "her half of the land descended to her children, subject to the payment of community debts." In effect this case holds that, the wife having died almost two years before the husband, the husband's executor took the land subject to the same right only that the husband had prior to his death, which was the right to sell only so far as necessary to pay community debts.

In Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367, Justice Brown had under consideration the rights of the heirs of the wife who died prior to her husband as against the husband's administrator, and cited and approved Moody v. Butler, supra. The ground of the decision is that the heirs of the mother were not parties to the administration and were not bound by the orders of the probate court. In other words, these cases in effect hold that when the wife dies, leaving the husband surviving, her community interest vests at once in her children, charged, of course, with the payment of community debts, and that the subsequent death of the husband and the granting of administration upon his estate does not confer jurisdiction over the estate of the heirs. In such case, the husband's administrator has the same power that the husband possessed, which is the power to sell only for the purpose of paying debts which are proper charges against the property. These cases, in our judgment, do not control the case under consideration. Here the husband died almost two years before the wife, and under the rule announced in Hollingsworth v. Davis, 62 Tex. 438, Moke v. Brackett, 28 Tex. 443, and Lawson v. Kelley, 82 Tex. 463, 17 S. W. 717, upon the appointment of the administrator of the husband the entire community estate passed under the jurisdiction and control of the probate court. Having such jurisdiction, the judgment of the court in authorizing and confirming a sale of the property is, in our opinion, conclusive.

Our conclusion is that the judgment of the district court and the Court of Civil Appeals, in so far as judgment was rendered in favor of the plaintiffs for the recovery of an undivided interest of 113.19 acres in the survey of the land in controversy, and for the value of timber cut and removed from the land, should be reversed, and judgment here rendered that plaintiffs take nothing, and that otherwise the judgment should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.