## LOVEJOY v. COCKRELL.
### No. 1692—6202.

Commission of Appeals of Texas, Section A.
Nov. 1, 1933.

A. D. Dyess, of Houston, for plaintiff in error.

Stewart & De Lange, of Houston, for defendant in error.

HARVEY, Judge.

This is a suit by Mrs. Mary O. Lovejoy, surviving wife of John Lovejoy, deceased, and the residuary devisees named in the will of the deceased, to recover of the defendant in error, Ernest Cockrell, an undivided half of a tract of five acres of land in Chambers county. The case went to trial before a jury, but at the conclusion of the testimony, the trial court ruled that no jury question was raised by the testimony, withdrew the case from the jury, and gave judgment for Mrs. Lovejoy, for one half of said undivided half sued for, and gave judgment in favor of Cockrell for the other half of said undivided half. The Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment for Cockrell for the entire undivided half interest in the land involved in controversy. 44 S.W.(2d) 1040. Mrs. Lovejoy applied for the writ of error, which has been granted.

The important question in the case involves the construction of the will of John Lovejoy, deceased, and the determination of the power of Presley K. Ewing, as executor of said will, to effect a valid sale of the undivided half of the five-acre tract which is in controversy. The material facts are undisputed and are substantially as follows:

John Lovejoy and Mary O. Lovejoy were husband and wife, and the former died in Harris county, October 4, 1916, leaving a written will, dated January 31, 1916. Omitting formal preliminary declarations, his will reads as follows:

"1. I direct that all my just debts and funeral charges by my executor hereinafter named be paid out of my estate as soon after my decease as shall by him be found convenient.

"2. I give and bequeath to my wife, Mary C. Lovejoy, all my household goods and furniture. All the property which I own is community and my wife being one-half owner of the community estate I am only disposing of my community interest in our estate.

"3. I give and bequeath to my sons, Bowie R. Lovejoy and John Lovejoy, Jr., One Hundred ($100.00) Dollars each.

"4. All the rest and residue of my estate, of which I shall die seized and possessed of to which I may be entitled at the time of my decease, I give and bequeath to my daughters, Edith Lovejoy and Cathryne Lovejoy, to be equally divided between them share and share alike.

"5. I nominate and appoint my friend, Presley K. Ewing, to be executor of my will and direct that no security be required of him as executor.

"6. It is my will that no action be had in the county court in the administration of my estate other than to prove and record this will and to return an inventory and appraisement of my estate and list of claims.

"7. I authorize and empower my said executor to sell and dispose of any portion of my estate, real or personal, at public or private sale, and in the manner that may seem to him best, for the purpose of paying my just debts and the legacies herein bequeathed."

The will was duly probated and Presley K. Ewing qualified as independent executor on November 10, 1916.

At the time Lovejoy wrote his will, as well as at the time of his death, he had a great deal of real and personal property, including the undivided half of the five-acre tract which is in controversy in this suit. All the property so held and owned by Lovejoy was community property of himself and wife. Lovejoy, both at the time his will was written and at the time of his death, owed a large amount of community debts. For the purpose of paying these community debts, Presley K. Ewing, acting as independent executor of John Lovejoy's will, sold various parcels of community property, including the undivided half of said five-acre tract. The undivided half of the five-acre tract was sold by the executor to Ernest Cockrell. The controlling question in this case goes to the power or authority of Ewing, as executor, to effect a valid sale of the entire half interest in the five-acre tract, for the purpose of paying the community debts of John Lovejoy, including the community interest of Mrs. Lovejoy in said property.

█ Before taking up the will of John Lovejoy for examination, it is necessary for a proper understanding of its terms, to notice briefly the relation of community property to the estate of the deceased husband. The community property of a husband and his wife is chargeable with the debts of the husband. Respecting the administration of the estate of a deceased husband, for the purpose of paying his debts which are chargeable to the community, the community property, as an entirety, is regarded in law as belonging to his estate, except in respects not pertinent to this case. While such administration of the estate of the deceased husband is pending in the probate court, the entire community property is subject to the jurisdiction of that court. This jurisdiction of the probate court is exclusive. Neither the surviving wife, as such, has authority under the statutes, to sell community property for the purpose of paying community debts of her husband, nor, in case she do not survive, does that authority appertain to the administration of her estate. Authority in that respect appertains exclusively to the pending administration of the estate of the deceased husband. Matula v. Freytag, 101 Tex. 357, 107 S. W. 536; Hollingsworth v. Davis, 62 Tex. 438; Moke v. Brackett, 28 Tex. 443; Murchison v. White, 54 Tex. 78; Moody v. Smoot, 78 Tex. 119, 14 S. W. 285; Carlton v. Goebler, 94 Tex. 93, 58 S. W. 829; Waterman Lumber Co. v. Robbins (Tex. Com. App.) 206 S. W. 825; Lee v. Henderson, 75 Tex. 190, 12 S. W. 981; Corzine v. Williams, 85 Tex. 499, 22 S. W. 399. Although the various decisions cited involve an administration of the deceased husband's estate under the direction of the probate court, they are equally decisive of the scope of exclusive jurisdiction of the independent executor of the deceased husband's will, so far as the payment of the community debts is concerned; for it is well settled that, as regards the sale of property belonging to the estate of the testator, for the purpose of paying the testator's debts, his duly authorized independent executor has all the authority which could be conferred on the administrator of the estate by the probate court if the estate were being administered there. Roy v. Whitaker, 92 Tex. 346, 48 S. W. 892, 49 S. W. 367; McDonough v. Cross, 40 Tex. 280; Speer on Marital Rights (3d Ed.) § 687. The only authority given by law to a testator to provide for the administration of his estate independently of the probate court is found in article 3436 of the statutes, which reads as follows: "Art. 3436. Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate."

█ In view of the various decisions cited, the above statute cannot but be taken as authorizing the husband, who owes community debts, to divert from the probate court the

administration of his entire estate, including the community property, and not a portion of it. In other words, the statute, for the purposes of the statute, regards the community property of the husband and wife, in case there be community debts, as belonging entirely to the estate of the husband, and does not authorize a dismemberment of the estate for administration purposes. A different interpretation of said statute would be inconsistent with the interpretation of the scope and effect of our administration statutes, including this one, which is reflected by the decisions cited. So then, with what has been already said held in mind, we come now to ascertain the subject-matter which John Lovejoy, in making his will, intended to be the field of operation of the powers of administration conferred on his executor.

In paragraph 5 of the will, the testator appointed Presley K. Ewing as executor, and in paragraph 6, in keeping with the authority granted by article 3436, provided for administration of the testator's estate, by the executor, independently of the probate court. The language contained in the last-named paragraph of the will is substantially the same as the language of the statute. It is to be presumed, therefore, that the testator intended to avail himself of the very authority given him by the statute, and intended to confer on the executor the same power, in all material respects, as the statute contemplates. For if the testator intended paragraph 6 of his will to affect only the testator's half interest in the community property of himself and wife, the whole paragraph would be invalid as being unauthorized by law. Since no such intention appears from the language of paragraph 6, an intention on the part of the testator, to limit the operation of the power conferred on his executor to the testator's half of the community property, must be sought elsewhere in the will. Counsel contends that language contained in paragraph 2 of the will discloses a purpose on the part of the testator to commit to his executor the power to administer but that portion of the testator's estate which was constituted of the latter's half interest in the community property. The language upon which this contention is founded is as follows: "All the property which I own is community property, and my wife being one-half owner of the community estate, I am only disposing of my community interest in our estate." In view of what has already been said, in regard to paragraph 6 of the will, and in regard to the scope and effect of our administration statutes, the above language cannot be reasonably construed as having reference to the powers of administration conferred on the executor. It cannot be reasonably supposed that the testator meant by this language to render nugatory paragraph 6 of his will. Such language is reasonably susceptible of a different meaning which would not affect the lawful powers of the executor which other portions of the will import. It is further contended that the provisions of paragraph 7 of the will disclose a purpose of the testator to have been to authorize his executor to sell property belonging to the testator's "estate," not only to pay debts but also to pay money legacies. This, too, is not reasonably susceptible of meaning a curtailment of the lawful powers of the executor which other portions of the will import. In providing for the sale, by the executor, of property belonging to "my estate," for the purpose of paying "my just debts and the legacies herein bequeathed," the testator manifestly contemplated such property belonging to his estate as could lawfully be sold by the executor for the respective purposes named.

We hold that Presley K. Ewing, as independent executor of the will of John Lovejoy, deceased, had authority to sell, for the purpose of paying community debts, the undivided half of the five acres in controversy, and that his deed to Ernest Cockrell invested the latter with title to said property, including Mrs. Lovejoy's community interest therein.

We recommend that the judgment of the Court of Civil Appeals, reversing the trial court's judgment, and rendering judgment for the defendant in error, Ernest Cockrell, be in all things affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.